YOUNGBLOOD *v.* COMER, receiver.

PATTERSON *v.* CENTRAL RAILROAD AND BANKING Co. *et al.*

1. The above stated cases are controlled by the decisions of this
court in the cases of *Henderson* v. *Walker et al., receivers,* 55
*Ga.* 481, and *Thurman* v. *Cherokee R. Co.,* 56 *Ga.* 376, holding
that when a railroad company is in the hands of and being
operated by a receiver, neither the company nor the receiver is
subject to suit by an employee for personal injuries occasioned
by the negligence of a coemployee.

2. As the rule announced in the above stated cases has stood as good law for about twenty years and the General Assembly has passed no act changing the same, and a majority of this court are of the opinion that they were correctly decided in the first instance, they are, upon a review of the same, hereby affirmed.

*Atkinson*, J., being bound by the rulings in the cases cited, concurs in the judgments rendered, but dissents from the majority opinion declining to overrule those cases.
August 12, 1895.

Actions for damages.   Before Judge Van Epps.   City court of Atlanta.   September term, 1894.

Before Judge MacDonell.   City court of Savannah. November term, 1894.

*Arnold & O'Bryan* and *J. C. Reed*, for plaintiff.

*Dorsey, Brewster & Howell*, for defendant.

*Garrard, Meldrim & Newman* and *W. R. Hammond*, for plaintiff.   *Lawton & Cunningham* and *T. M. Cunningham, Jr.*, for defendant.

SIMMONS, Chief Justice.

These two cases are controlled by the decisions of this court in the cases of *Henderson* v. *Walker*, 55 Ga. 481, and *Thurman* v. *Cherokee Railroad*, 56 Ga. 376.   In the argument here leave was asked and granted to review these decisions.   I am aware that other courts have taken a different view from that laid down by this court in the decisions referred to, but in my opinion the reasoning of Bleckley, J., in *Henderson* v. *Walker*, *supra*, has never been successfully answered.   That case was decided twenty years ago, but the legislature has not yet seen fit to change the rule there laid down, nor, so far as I am aware, has any effort been made to do so.   After careful consideration, a majority of the court, believing that the cases reviewed were well decided, decline to overrule them.

*Judgment affirmed.*

ATKINSON, Justice, concurring.

The court is requested to review and overrule the decisions rendered by this court in the cases of *Henderson* v. *Walker*, reported in 55 *Ga.* 481, and *Thurman* v. *The Cherokee Railroad*, 56 *Ga.* 376, in which it was held, many years ago, that a receiver, operating a railroad property under its franchises, is not in his official character liable to one employee for damages resulting from injuries inflicted in consequence of the negligence of a coemployee. The majority of the court is of the opinion that the decisions in question should stand as law; and being of a contrary opinion, I shall endeavor to state the reasons which lead me to that conclusion.

The statutory provision under which the liability is sought to be imposed is as follows: "If the person injured is himself an employee of the company, and the damage was caused by another employee, and without fault or negligence on the part of the person injured, his employment by the company shall be no bar to the recovery." This section of the code (§3036) is taken from the act of 1856, to which reference will hereafter be made; and it is insisted that the word "company," as employed in the section of the code, is equivalent to the term, "railroad companies of this State," as employed in the act above referred to.

The public policy of this State, in its relation to the exercise of corporate franchises by railroad companies, was early declared by distinct legislative enactment. Upon grounds of public policy, the common law rule of non-liability for the commission of torts by their servants upon the persons of fellow-servants when employed about the common employment, was changed so as to permit a recovery by one servant injured in consequence of the negligence of another, provided the person so injured· was himself free from fault. This statute was directed against railroad companies, not because they were corporations

only, nor because of any spirit of hostility to those about to embark in railroad building, but because it was deemed a necessary police measure for the regulation of the business of running railroads. In the legislative mind the business was classed as extra hazardous, and it did not intend that persons operating railroads under charter powers should impose upon their servants the extreme peril of a business in the conduct of which they could exercise none, much less a controlling influence over the conduct of co-employees. Incorporated railroad companies being the creatures of the law, the creator at the moment of conception impresses upon their lives, as a condition of existence, as a condition precedent to the exercise of any of the powers conferred by their several charters, that they shall be liable as above indicated. Upon those railroad companies whose corporate existence antedated the passage of the act, this change in the law applied as a police measure affecting the business of operating railroads under charter powers; and according to the opinion of the writer, this court fell into an error when, in the case now under review, the word "railroad companies," as used in the act, was limited in its significance to railroad companies *eo nomine*, and was not extended to all persons, whether natural or artificial, who were engaged in the business of running and operating a railroad under and by virtue of charter powers. At the time of the passage of the act, mere private railroads were unknown; and hence it may well be supposed that when it designated the objects upon which it was designed to operate, as the "railroad companies of this State," it intended that its application should extend to all railways operated under direct authority of the State. They were *quasi* public corporations, and the legislature could lawfully impose upon them the burden of this statute as a condition of existence; and hence we are led to believe that when the expression above quoted was used, it was the purpose of the legislature to apply it to the business, and not

to persons or corporations which were railroad companies *eo nomine* only. If its significance were so confined, there would be no authority for applying the rule of liability above indicated to railroad and banking companies, or to canal and railroad companies, or to individuals who, having under the present law purchased the properties and franchises of a railroad company, chose to take out a certificate of incorporation under some name other than that of a railroad company; because, while in fact operating railroads, such are not railroad companies only, and yet the courts of this State have constantly applied the rule in question to all such corporations and persons engaged in the business of operating railroads under charter authority, and without reference to whether it was or was not by name a railroad company. The statute in question having been enacted for the protection of employees of such companies operating railroads, the business conducted under their charters would seem upon reason to be impressed with the liabilities imposed by law, without reference to the person or agency which might lawfully thereafter be employed in the conduct of the business for which it was chartered; and this being true, there is no reason apparent to my comprehension why a receiver, like any other person who may attempt to exercise the charter power, should be exempt from the liability thus imposed. The statute in question is one highly remedial, and, being of that nature, should be liberally construed in advancement of its obviously beneficial purposes. In its construction, to cling tenaciously to its letter ignores its spirit and purpose, and defeats the manifest legislative intent. It is true that the receiver represents the court in so far as the mere custody of the property is concerned; but when the court undertakes to exercise the charter power to operate the property in its custody, the receiver likewise represents the corporate franchise, and necessarily assumes, in his official character, the responsibilities, duties and obligations imposed upon

the franchise which he seeks to exercise. It is impossible to dissociate the corporate entity and these responsibilities; and this very idea has received no stronger sanction than is derived from the very opinion which this court is now asked to review, as will appear from the following quotation from the learned Justice who delivered its opinion: "The property and franchises of the company have been seized, and the court, subordinate to the laws of the land, is the lord paramount." In other words, the court is authorized to possess itself of and operate the road in subordination to the law of the land; and one of the conditions imposed upon all railroad companies in the operation of railroad properties is, that they shall assume the liability imposed by the general law. This is as much the law of the land as applied to chartered railroad companies, as the law which imposes responsibility upon common carriers for injuries to passengers and property; and, therefore, it is difficult to understand why the statute should not extend as well to receivers as to the chartered companies themselves. The same principle of public policy is involved; there is the same reason for its application in the one case as in the other; and the only reason assigned for its nonapplication is, not that the character of the property has undergone a change, not that its obligations to the law are less binding, but that by a species of judicial legerdemain there has been a substitution of judicial for corporate directory and management. Upon this subject Mr. Beach, in his work on Receivers, §717, states the rule to be: "In this country where receivers are frequently empowered to manage and carry on the business of the parties or corporations of whose property they have the charge on behalf of the court—and this especially in the case of railway receiverships,—their duties require them to enter into new obligations, and subject them to the same liabilities for damages for injuries as are incurred by others who carry on similar enterprises for their own benefit. Being

actually engaged in business, justice to those with whom they deal demands that they shall be held to the same accountability, whether their liabilities arise from contract or tort." Citing for the text, *ex parte* Brown, 15 S. C. 518; Little *v.* Dusenberry, 46 N. Y. Law, 614, in which latter case the court remarks: "It accords with sound principle and reason, that a receiver exercising the franchise of a railroad company shall be held amenable in his official capacity to the same rules of liability that are applicable to the company while it exercises the same powers of operating the road." To the same effect see High on Receivers, §395, and the numerous cases there cited. See, also, Hornsby *v.* Eddy (Eighth Circuit Court of Appeals), 56 Federal Reporter, p. 461, and Mears, adm'r, *v.* Holbrook, 20 Ohio St. 137. The overwhelming weight of judicial authority is at this time opposed to the doctrine of the cases now under review, and in the light of passing events it may well be doubted whether they should stand as law.

Let us examine the statute now under review, in the light of other statutes which undertake by reference to particular names to regulate a particular business. We find in the tax acts, as they have year after year been passed by the General Assembly, a special tax levied upon circus companies, sewing-machine companies, and insurance companies, doing business in this State. Suppose a company incorporated for either of these purposes should become insolvent and a court of equity should seize its assets and undertake to operate its business through a receiver, would it be pretended that the court, through its receiver, could run a circus or a sewing-machine or insurance business without paying the license tax imposed by law? Certainly not, for the reason that while the legislature in imposing the tax employed language which might be so construed as to limit the levy to the particular person or corporation named, yet its manifest purpose was to levy the tax upon the business; and when any person undertook

to conduct the business, the tax act would apply to him, not because he was mentioned as being subject to its terms, but because his business drew him within its operation. The act now under review was passed by the General Assembly in the year 1856 (see Acts 1855-6, p. 154), and since then has been incorporated in the code in various sections.    It is entitled, "An act to define the liability of the several railroad companies of this State, for injury to persons or property, to prescribe in what counties they may be sued and how served with process."    The several sections of the act as they relate to the distinct subjects treated, each refer to "the several railroad companies of this State." The first section prescribes where, how and in what manner "the several railroad companies of this State" may be sued and served; the third section, being the one imposing the liability sought to be enforced in the present case, provides that *"the several railroad companies of this State"* shall be liable, etc.    These sections are cited for the purpose of calling attention to the fact that, since the rendition of the decision now under review, this court has, in a well considered opinion in the case of *Ball* v. *Mabry,* 91 *Ga.* 783, extended the meaning of the words, "the several railroad companies of this State," as employed in the first section of the act, so as to embrace and bring within the provisions of the act suits against receivers of the assets of such companies.    In that case suit for damages from personal injuries was brought against a receiver in his official character in one of the counties through which the railroad operated by him ran.    He filed a plea to the jurisdiction, alleging his residence elsewhere, and this plea was stricken on demurrer; and in discussing the question of jurisdiction the court, through the present Chief Justice, says: "The receiver does not operate the railroad as an individual, but exercises the charter rights and franchises of the company of which he is receiver.    As receiver he resides in each county through which the railroad passes.    Exercising the

franchises of the company, he becomes a common carrier and stands in the shoes of the company, and is liable to be sued in the county in which the cause of action originated, as the company would have been, under section 3406 of the code, before he was placed in charge as receiver." If, under the provisions of the act above referred to, the receiver, as an incident to the exercise of the corporate franchise, acquired a residence for the purposes of suit in a county other than his residence, if the. venue of a suit against him is attached to the place where the cause of action originated, by words which literally apply only to "the several railroad companies of this State," it is difficult to understand why the use of the same words would not attach to him, in his official character, the liability imposed by the statute upon the company itself. This decision is to my mind a distinct recognition of the doctrine stated, and almost in the language of the text-writers above referred to, and seems to me ample authority to treat the receiver as "standing in the shoes of the company," and liable accordingly.

The Chief Justice, in delivering the opinion of the court in the present case, seems to rest its judgment, to some extent at least, upon the doctrine of *stare decisis*, and seems to intimate that inasmuch as the General Assembly has not seen fit by positive statute to repeal the effect of these decisions and change the rule laid down, this court should not now reverse its former ruling. The doctrine of *stare decisis* it is admitted is a wholesome and salutary one when applied to a proper subject; and where rights have grown up under a judicial interpretation of a statute, it is better in many instances that the construction thus placed upon it should stand than that such rights should be again called in question; but it is respectfully submitted that the doctrine has no application where the courts are dealing with a matter concerning which they have seen proper themselves to legislate. The doctrine that courts of equity through

receivers may engage in the conduct of any kind of industrial enterprise, much less run and operate a great line of railway, has no foundation in positive statutory legislation in this State. The General Assembly has never directly authorized such a proceeding, and never indirectly, except so far as silence, and a casual reference to the manner in which funds in the hands of such receivers should be distributed, may be construed as an approval of the practice; but the power is one which the courts themselves have, of comparatively recent years, for themselves evolved from that other implied power supposed to reside in all courts of chancery, to seize and protect against loss and destruction the property of insolvent persons and corporations for the benefit of all concerned. In this process of preservation courts have come commonly to consider the operation of railways necessary to their preservation, and hence have drawn the power to run and operate such properties. Courts of equity have appealed to no law to authorize this act; and hence when, in the execution of the great trust imposed upon chartered corporations, "the court as the lord paramount" seizes to its use corporate property, it should at least see to it that it exercises the franchises seized, "in subordination to the law of the land." The courts should observe, not violate, the law; and this court, in sanctioning the exercise of that power by the circuit judges, should impose upon their receivers the same liability which the statute law has attached to the property in the hands of the persons from whom it was wrested by judicial process. If in the one instance the courts possessed the inherent authority to evolve the power exercised, they would have the same authority to regulate the exercise of the power; and it would seem that in this process of regulation no more appropriate rule could be adopted than the one which follows the analogy of the express law, and imposes upon receivers operating railroads

v 97-11

the same liabilities which rest upon railroad companies. The question then is, not whether the legislature will permit the rule called in question longer to stand, but whether this court will not of itself adopt one which is more in consonance with the spirit and reason of the law, and more nearly in harmony with its subsequent adjudications upon a similar subject.

Aside from considerations of public policy, the abstract justice of the situation demands that railway companies which have incurred a bonded indebtedness and have encumbered their property, or which have been practically wrecked by the improvidence or dishonesty of their boards of directors, should not occupy a better position under the law than those which by thrift and industry have escaped financial disaster. Under the operation of the rule in question, railroad companies are invited to improvidence; for if, by becoming involved and defaulting in meeting its obligations, one of them can procure the establishment of a judicial protectorate over its property and franchises, which will relieve it of all responsibility to employees under the law of the land, if it can thus escape the burdens of corporate existence, what encouragement will it receive from the law to perform its duties? If insolvency means immunity, then why should railroad companies whose properties are encumbered strive to be solvent? or why should creditors of such corporations desire to have them remain under corporate control?

Allow the doctrine contended for by the majority of the court, and we find that by a single stroke of the pen a circuit judge has power to practically repeal the law governing the operation of railway lines extending over hundreds of miles of territory. The General Assembly says to a railroad company to-day: "If by the negligence of a fellow-servant you injure one of your employees, you are liable; if you injure a person who is neither a passenger nor an employee, or if you injure the property of any person, the

presumption of the law is you are negligent. If you fail to check your train and blow the whistle as you approach a public crossing, you will be liable for injuries to a person being thereon." To-morrow the circuit judge appoints a receiver to do the same work, to discharge exactly the same duties to the public and to individuals; and the doctrine of the decisions now under review says that these provisions of the law thenceforth shall have no application. So far-reaching and so disastrous in its consequences is the doctrine stated, that I cannot bring my mind to believe that the court, as constituted at the time the decisions in question were rendered, fully appreciated the extent of their application. The principle of these decisions leads irresistibly to a judicial repeal of the law establishing the railroad commission, of the law imposing the burden of proof upon railroad companies in cases of injuries to persons or property, and as well to a repeal of the statute regulating the running of trains at public crossings, in so far as the same may have heretofore been supposed to apply to railroads operated by receivers; for in each of these instances, by the letter of the several statutes, their provisions are made applicable to railroad companies, and cannot, under authority of these decisions, be extended to railroads operated by receivers. These statutes are each designed to accomplish an end highly beneficial to the interests of the public. I cannot give my assent to a doctrine which impairs their force, and my brethren of the majority must walk alone the path which leads to their partial judicial repeal.

My own judgment is that the two decisions called in question should be overruled; but inasmuch as my brethren disagree with me, I feel bound by the doctrine declared in them, and hence concur in the judgment of the majority affirming the judgment of the lower court.